UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUNA BARNARD,<br><br>Plaintiff,<br><br>v.<br><br>COREPOWER YOGA LLC,<br><br>Defendant. | Case No. 16-cv-03861-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS COUNSEL ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 40, 42 |

Pending before the Court are two motions in this putative class action dispute. First, Plaintiff Shauna Barnard moves the Court for an order granting final approval of the parties' proposed settlement. Dkt. No. 42. Second, Plaintiff moves the Court for an award of attorneys' fees and costs. Dkt. No. 40. The Court held a final fairness hearing on both motions on February 15, 2018. For the reasons stated below, the Court **GRANTS** final approval. The Court also **GRANTS IN PART** Plaintiff's motion for attorneys' fees and costs.

## I.     BACKGROUND

### A.     Litigation Background

On May 3, 2016, Plaintiff filed this action against Defendant CorePower Yoga LLC, in Alameda Superior Court, alleging that Defendant's pay and meal and rest break practices violated the California Labor Code. *See* Dkt. No. 1-2, Ex. A. According to Plaintiff, Defendant did not pay its California yoga instructors minimum wage or overtime compensation, and did not compensate them for various other tasks instructors performed, such as running the reception desk, completing required trainings, traveling to different studios, and creating playlists for classes. *See* Dkt. No. 39 ("Second Amended Complaint" or "SAC") ¶¶ 19, 36, 45, 62. Nor did they provide

meal and rest breaks or reimburse them for reasonable businesses expenses. *Id.* On the basis of these facts, Plaintiff alleges nine causes of action for failure to: (1) pay minimum and hourly wages, Cal. Lab. Code §§ 1194, 1194.2, 1197, 1197.1; (2) reimburse necessary business expenses, *id.* § 2802; (3) compensate for all hours worked, *id.* §§ 200–204; (4) provide meal and rest breaks, *id.* §§ 226.7, 512; (5) pay overtime compensation, *id.* §§ 510, 558, 1194; (6) maintain accurate time and payroll records and provide itemized wage statements, *id.* §§ 226, 226.3, 1174; (7) timely pay wages due at separation of employment, *id.* §§ 201–203; (8) unlawful and unfair business practices, Bus. & Prof. Code §§ 17200 *et seq.*; and Plaintiff also seeks (9) statutory penalties under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq. See id.*

Following extensive formal discovery, and with the assistance of a private mediator, the parties entered into a settlement agreement. Dkt. No. 36-1, Ex. 1 ("SA"). The parties filed the motion for preliminary approval on July 25, 2017. *See* Dkt. No. 36. The Court granted the motion on September 11, 2017. *See* Dkt. No. 37. The Court directed the parties to implement their proposed class notice plan, including additional information about the deadlines for filing and objecting to Plaintiffs' attorneys' fees motion. *Id.* at 12–13.

**B. Settlement Agreement**

On July 25, 2017, the parties submitted a class action settlement agreement that details the provisions of the proposed settlement. *See* SA. The key terms of the settlement are as follows:

Class Definition: All individuals who were employed at any time by Defendant in California as non-exempt/hourly yoga instructors, interns, or teachers between April 4, 2015, and September 11, 2017. SA ¶ 5. The parties have identified a total of 1,870 class members. Dkt. No. 42-7 ¶¶ 4, 6.

Monetary Relief: Defendant will establish a gross settlement fund consisting of $1,400,000. SA ¶¶ 7, 39. The parties propose that civil penalties of $30,000 related to the PAGA claim will be paid to the California Labor and Workforce Development Agency ("LWDA"). SA ¶¶ 15, 42; *see also* Cal. Lab. Code § 2699(i) (providing that penalties under PAGA are split 75% to LWDA and 25% to aggrieved employees). The gross settlement fund accordingly includes Court-approved attorneys' fees and costs, settlement administration fees, the LWDA payment, and

any additional payment to Plaintiff as class representative. SA ¶¶ 10, 16, 39, 60. The cash payments to the class will be based on the number of yoga classes each class member taught at a California studio during the relevant class period. *Id.* ¶ 44. The parties have estimated that after the deductions identified above, individual class members will receive on average $484.96 (the equivalent of approximately 29 hours of unpaid work), and $3,766.76 as the highest estimated payment (the equivalent of approximately 224 hours of unpaid work). Dkt. No. 42-7 ¶ 12; *see also* Dkt. No. 42-1 at 5.

Release: The class will release Defendant from all claims that arise out of services to Defendant from April 5, 2015, to September 11, 2017, that are based on the same operative facts as those in the SAC, including claims for the nine causes of action stated in the complaint. SA ¶¶ 22, 70.

Incentive Award: The settlement agreement authorizes named Plaintiff Shauna Barnard to file a motion for a $10,000 incentive award, subject to court approval. SA ¶ 10. Counsel filed this motion on October 26, 2017. *See* Dkt. No. 40; *see also* Dkt. No. 40-4. Defendant does not oppose this request. *See* Dkt. No. 41.

Attorneys' Fees and Costs: The settlement agreement authorizes class counsel to seek attorneys' fees not to exceed 30% of the gross settlement amount, and for costs not to exceed $20,0000. SA ¶ 2. Class counsel filed this motion on October 26, 2017. *See* Dkt. No. 40. Defendant does not oppose this request. *See* Dkt. No. 41.

## II. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on September 11, 2017, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No 37 at 4–8.

### ii.     The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).   The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above.  In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . .").  To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors:  (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026.  "The relative degree of importance to be attached to any particular factor" is case specific.  *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon*, 150 F.3d at 1025.  As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

### a.  Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the

4

class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (noting that "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice").

The Court finds that the notice and notice plan previously approved by the Court, Dkt. No. 37 at 11–12, was implemented and complies with Rule 23(c)(2)(B). The Court ordered that third-party settlement administrator, Dahl Administration, LLC, send class notice via first class mail to each putative class member at their last known address, as provided by Defendant and updated as appropriate. *Id.* at 11. Dahl Administration states that class notice was provided as directed. *Id.* ¶ 6, & Ex. A. Prior to sending class notice, Dahl Administration verified the addresses with the National Change of Address Database. Dkt. No. 42-7 ¶ 5. It also provided a toll free number to field any questions about the proposed settlement. *Id.* ¶ 9. Dahl Administration engaged a professional address search firm for any returned Notice Packets. *Id.* ¶ 7. Updated addresses could not be found for thirty-four Class Members, even after further tracing efforts. *Id.* ¶¶ 7–8. The parties received no objections to the settlement and only three requests for exclusion from the settlement. *Id.* ¶¶ 10–11. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

### 1. Strength of Plaintiff's Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D.

Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at \*4 (N.D. Cal. June 27, 2014) (quotation omitted).

Though this action reached settlement before the Court had an opportunity to consider the merits of the claims, the Court finds that the amount offered in settlement is reasonable in light of the strength of the underlying case. In discovery, Plaintiff obtained Defendant's own time records, class schedules, and payroll documents, to support her theory of the case. *See* Dkt. No. 42-1 at 5. Nevertheless, as Plaintiff concedes, she would face both factual and legal hurdles were she to continue litigating. Certifying a class in this action would be challenging where, as here, the instructors worked at different studios across the state, with different studio and regional managers, and Defendant's policies — both oral and written — changed during the class period. *Id.* at 6. When combined with Defendant's apparent willingness to defend against this action, Plaintiff would not be guaranteed a favorable result. In reaching a settlement, however, Plaintiff has ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at \*4 (favoring settlement to protracted litigation).

### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Certifying a class encompassing approximately 1,870 prospective employees who worked at different studios across California presents complex issues that could undermine certification. Accordingly, this factor also weighs in favor of settlement.

### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $1,400,000 settlement amount falls "within the range of reasonableness" in light of

the risks and costs of litigation. Each class member will receive a portion of the settlement based on the number of yoga classes taught during the class period as compared to all classes taught by the class. After deductions for attorneys' fees and costs, settlement administration costs, and an enhancement award for Plaintiff, the parties estimate that class members will receive on average $484.96, the equivalent of approximately 29 hours of unpaid work per employee. *See* Dkt. No. 42-1 at 5; *see also* Dkt. No. 42-7 ¶ 12. This factor weighs in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, Plaintiff conducted an in-depth investigation into Defendant's payroll practices and the parties participated in both a settlement conference and a mediation. *See* Dkt. No. 42-1 at 6–7; *see also* Dkt. No. 36-1 ¶ 3. The Court thus finds that the parties have received, examined, and analyzed information, documents, and materials that sufficiently enabled them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 5. Reaction of Class Members

The reaction of the class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served on each class member in accordance with the methods approved by the Court, advised the class of the requirements to object or opt out of the settlement. *See* Section II.A.ii.a. No objections were received and only three class members opted out. *See* Dkt. No. 42-7 ¶¶ 10–11. The Court finds that the absence of objections and very small number of opt-outs indicate overwhelming support among the class members and weighs in favor of approval. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v.*

*West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

*    *    *

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiffs' motion for final approval of class action settlement is **GRANTED**.

### B.    Attorneys' Fees and Costs

In its unopposed motion, class counsel asks the Court to approve an award of $420,000 in attorneys' fees and $19,865.77 in costs. Dkt. No. 40. Class counsel also seeks $12,878 for Dahl Administration's settlement administration costs and a $10,000 incentive award for the named Plaintiff for her assistance in this case. *Id.*

#### i.    Attorneys' Fees

Federal courts sitting in diversity apply state law in determining both a party's rights to attorneys' fees and the method of calculating them. *See Mangold v. Cal. Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The California Supreme Court has clarified that where a class action suit results in a common fund for the class, the trial court may award attorneys' fees as a percentage of the common fund. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (Cal. 2016). "The percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery." *Id.* at 489.

The trial court may "double check the reasonableness of the percentage fee through a lodestar calculation." *Id.* at 504 (concluding that "[a] lodestar cross-check . . . provides a mechanism for bringing an objective measure of the work performed into the calculation of a reasonable attorney fee."). "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative 'multiplier' to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the

8

results obtained, and the contingent risk presented." *Id.* at 489. "If a comparison between the percentage and lodestar calculations produces an imputed multiplier far outside the normal range, . . . the trial court will have reason to reexamine its choice of a percentage." *Id.* at 504. "The goal under either the percentage or lodestar approach [is] the award of a reasonable fee to compensate counsel for their efforts." *Id.*

Here, class counsel seeks thirty percent of the settlement amount, for a total of $420,000. Class counsel from two law firms expended a combined 717.70 hours from May 2016 to January 2018. *See* Dkt. No. 40-1 ¶ 11; *see also* Dkt. No. 40-3 ¶ 11. Class counsel is consequently seeking fees higher than their aggregate lodestar of $401,265.50. *See* Dkt. No. 40 at 2. To justify this upward departure, class counsel states that this figure represents a reasonable 1.047 multiplier, in light of the results counsel secured for the class. *See* Dkt. No. 40 at 10–11.

The Court agrees that this request is reasonable, even when cross-checked against the lodestar. As a preliminary matter, the Court finds that the billing rates used by class counsel to calculate the lodestar are reasonable and in line with prevailing rates in this District for personnel of comparable experience, skill, and reputation. *See* Dkt. No. 40-1 ¶ 11 ($695 per hour with 25 years of experience); Dkt. No. 40-3 ¶¶ 11, 15 ($495 per hour with 15 years of experience). *See, e.g.*, *Santiago v. Delaware North Companies Sportservice, Inc.*, No. 3:15-cv-269 (S.D. Cal.) (approving class counsel's rates as reasonable in class action settlement).

After reviewing the time class counsel spent litigating this action, the Court notes that counsel worked efficiently and diligently to reach this result. *See* Dkt. No. 40-1 ¶ 11; Dkt. No. 40-3 ¶¶ 11, 15. Defendant vigorously litigated this action, denying liability and the appropriateness of class certification. As discussed in Section II.A.ii.b, Plaintiff faced both factual and legal hurdles given the number of employees who worked at different studios across California. Class counsel, therefore, assumed great risk in litigating this action on a contingency fee basis. Class counsel also obtained significant results for the class: under the settlement agreement, individual class members will receive on average $484.96 (the equivalent of approximately 29 hours of unpaid work), and up to $3,766.76 (the equivalent of approximately 224 hours of unpaid work). Dkt. No. 42-7 ¶ 12; *see also* Dkt. No. 42-1 at 5. The Court finds that class counsel's requested

fees are reasonable in light of the results achieved for the class and the detailed discovery it conducted, and finds that a benchmark award of thirty percent of the settlement fund is appropriate. The Court accordingly **GRANTS** class counsel's motion for attorneys' fees in the amount of $420,000.

### ii. Attorneys' Costs

Class counsel seeks reimbursement of $19,865.77 in out-of-pocket costs. *See* Dkt. No. 40 at 11–12. Class counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation omitted).

Plaintiff has submitted Mr. Derek J. Emge's and Mr. David C. Hawkes' declarations explaining that they incurred this amount in litigation-related costs and expenses, including for: (1) filing fees; (2) service fees; (3) deposition reporting and transcripts; (4) travel; (5) copy charges; (6) excess postage costs; and (7) mediation expenses. *See* Dkt. No. 40-1 ¶ 16; *see also* Dkt. No. 40-3 ¶ 14. However, class counsel did not initially itemize each expense incurred during this case to allow the Court to evaluate whether the costs were reasonable and properly expended. *See Gaudin v. Saxon Mortgage Servs., Inc.*, No. 11-CV-01663-JST, 2015 WL 7454183, at *9 (N.D. Cal. Nov. 23, 2015) ("To support an expense award, Plaintiffs should file an itemized list of their expenses by category and the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable."). Consequently, the Court ordered class counsel to file an itemization. Having reviewed the additional documentation, *see* Dkt. No. 44, the Court is satisfied that these costs were reasonably incurred and **GRANTS** in full the motion for costs in the amount of $19,865.77.

### iii. Settlement Administration Costs

Class counsel seeks $12,878 for the costs of class administration conducted by Dahl Administration. Dkt. No. 42-1 at 8; *see also* Dkt. No. 42-7 ¶ 14. Dahl Administration's duties included: verifying all class members' mailing addresses, preparing and disseminating the class notice, and operating and maintaining a toll-free phone number for the settlement. *See* Dkt. No. 40-7 ¶¶ 4–11. The class notice informed class members that administration costs up to $25,000

would be deducted from the settlement fund, *see id.*, Ex. A at 5, and no class member objected. Courts regularly award administrative costs associated if notice is provided to the class. *See, e.g.*, *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 2909429, at *11 (N.D. Cal. May 19, 2016); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015). Given the scope of Dahl Administration's administrative duties in this case, the Court concludes that its costs were reasonably incurred for the benefit of the class and **GRANTS** the full amount of $12,878.

### iv. Incentive Award

Class counsel requests a service award of $10,000 for named Plaintiff. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotation omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

The Court finds that an $8,000 service award is reasonable to compensate Plaintiff given her exemplary contribution to this case. As detailed in her declaration, Plaintiff first raised her payroll concerns with Defendant in early 2016, providing Defendant with itemized written estimates of the alleged uncompensated work. *See* Dkt. No. 40-4 ¶ 3. When her attempts were unsuccessful, she solicited legal counsel. *Id.* ¶ 4. Plaintiff continued to be intimately involved in the case, collecting extensive documentation in support of the action; editing drafts of pleadings,

11

discovery requests, and settlement documents; and devoting significant time to meeting with her attorneys and participating in the settlement conference and mediation. *Id.* ¶¶ 6–21. The Court also acknowledges the risk Plaintiff took in litigating this action while still employed by Defendant, and the risk she continues to face because of the relatively small size of the yoga community in which she works. *See id.* ¶ 5. Moreover, an $8,000 incentive award is not substantially disproportionate to class members' anticipated recovery. The average estimated recovery in this case is $484.96, and the highest estimated recovery is $3,766.76. Dkt. No. 42-7 ¶ 12; *see also* Dkt. No. 42-1 at 5; *cf. Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293, at *19 (N.D. Cal. Mar. 24, 2017) (rejecting proposed $2,500 incentive award as "wholly disproportionate" to the approximately $3 recovery of other class members). Based on the exceptional facts presented, including the named Plaintiff's unusually substantial contributions to the class, class counsel's request for an incentive award is **GRANTED IN PART** in the amount of $8,000 for the named Plaintiff.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

**III.    CONCLUSION**

For the foregoing reasons it is hereby ordered that:

1.    Plaintiff's Motion for Final Approval of Class Action Settlement is hereby **GRANTED**.

2.    Plaintiff's Motion for class counsel's Attorneys' Fees and Costs is hereby **GRANTED IN PART AND DENIED IN PART**.

3.    The Court approves the settlement amount of $1,400,000, including payments of attorneys' fees in the amount of $420,000; costs in the amount of $19,865.77; claims administration fees in the amount of $12,878; and an incentive fee for the named Plaintiff in the amount of $8,000.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement.  The parties are further directed to file a stipulated final judgment by February 28, 2018.

**IT IS SO ORDERED.**

Dated:   2/21/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge